1
2
3
4

UNITED STATES DISTRICT COURT

5

FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

OAKLAND DIVISION

7

8
9   SECURITY ALARM FINANCING
    ENTERPRISES, L.P. d/b/a SAFEGUARD
    SECURITY a Limited Partnership,
10

11          Plaintiff,

12      vs.

13  MIKAYLA NEBEL, an individual,
    RUSSELL NIGGEMEYER, an individual,
14  and DOES 1-25,

15          Defendants.

Case No:  C 15-04341 SBA

**ORDER GRANTING
DEFENDANTS' MOTIONS
TO DISMISS FOR LACK OF
PERSONAL JURISDICTION AND
TRANSFERRING THE ACTION**

16
17          Plaintiff Security Alarm Financing Enterprises, L.P. ("Plaintiff" or "SAFE") brings

18  the instant action against Defendants Mikayla Nebel ("Nebel") and Russell Niggemeyer

19  ("Niggemyer") (collectively "Defendants") in the Northern District of California.[1]  Dkt. 1.

20  The action arises out of Plaintiff's withdrawn corporate sponsorship of Nebel in her

21  capacity as a professional boxer.  The parties are presently before the Court on Nebel's

22  Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Dkt. 20, and

23  Niggemyer's Motion to Dismiss for Lack of Memorandum in Support, Dkt. 23.  Having

24  read and considered the papers filed in connection with these matters and being fully

25  informed, the Court hereby GRANTS Nebel and Niggemyer's respective motions, for the

26  reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution

27  without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

28          [1] Plaintiff erroneously sued Niggemyer as "Russell Niggemeyer."  See Niggemyer
    Decl. ¶ 3, Dkt. 32-2.

I. **BACKGROUND**

A. **FACTUAL SUMMARY**

Plaintiff is a limited partnership formed under the laws of the State of California, with its principal place of business in San Ramon, California.  Compl. ¶ 1, Dkt. 1.[2] Plaintiff is "in the business of selling, installing, servicing, and monitoring residential and commercial security alarm systems throughout the United States and Canada."  Id.  Plaintiff has obtained several trademarks.  Id. ¶ 3.

Nebel is a boxer who has participated in eight professional bouts.  Compl. ¶ 6; Nebel Decl. ¶¶ 11-12, Dkt. 21.[3]  She is a citizen and resident of Nevada.  Nebel Decl. ¶ 1. Plaintiff alleges, on information and belief, that Niggemyer "manages Nebel's boxing activities, including her advertising and promotional activities, and acts as Nebel's agent."  Compl. ¶ 7.  Niggemyer is a citizen and resident of both Nevada and Ohio.  Niggemyer Decl. ¶ 1, Dkt. 23.

In October 2014, immediately after Nebel's seventh professional boxing match in Washington, D.C., SAFE President and Chief Executive Officer Paul Sargenti ("Sargenti") "approached Nebel to determine if Nebel was interested in a sponsorship deal with SAFE." Compl. ¶ 13; see also Sargenti Decl. ¶ 7, Dkt. 26.  Sargenti, who was present at the boxing match as a spectator, handed Nebel "a $100 gratuity and his business card."  Nebel Decl. ¶ 26; see also Sargenti Decl. ¶ 7.  Shortly thereafter, in November 2014, Nebel sent Sargenti an email to thank him for the gift and "follow up as to whether he was still interested in supporting [her] career through . . . a sponsorship."  Nebel Decl. ¶ 27; see also Sargenti Decl. ¶ 8.  They exchanged no further communications for several months.

---

[2] Plaintiff consists of two partners: Security Alarm Financing Enterprises, Inc. and SAFE Security, Inc.  Compl. ¶ 1.

[3] Although Plaintiff alleges that Nebel "competes in venues throughout the United States," Compl. ¶ 6, Nebel has "never had a boxing match in the State of California," Nebel Decl. ¶ 12.  Nebel has participated in boxing matches in New Jersey, New York, Connecticut, Washington, D.C., and Arizona.  See Nebel Decl. ¶¶ 13-20 and Exs. 1-8.

In March 2015, Sargenti sent Nebel an email stating that he would be traveling to Las Vegas in April and "wanted to see if [Nebel] w[as] available to catch up a bit." Sargenti Decl. ¶ 9, Ex. 2.  Sargenti stated, "I think about you often and remember how determined and focused you[] were in the ring."  Id.  Nebel responded that she was interested in a meeting.  Id., Ex. 3.  On April 16, 2015, Sargenti and Nebel met in Las Vegas to discuss Nebel's boxing career and Sargenti's interest in sponsoring Nebel.  Nebel Decl. ¶ 32.  Sargenti also brought along Gary and Carmela Franklyn to "discuss marketing and public relations."  Id.  Sargenti "suggested that SAFE would purchase items for Nebel necessary for Nebel to market herself, and in return Nebel would market SAFE's products and services by wearing clothing emblazoned with SAFE's trademarked emblems and logos."  Compl. ¶ 14.

After the meeting in Las Vegas, Sargenti sent an email asking Nebel if she was satisfied with "the action plan that [wa]s developing."  Sargenti Decl. ¶ 10, Ex. 4.  Sargenti mentioned that Gary and Carmela Franklyn were "working to get [Nebel] on a [boxing] card in the Phoenix area" and to "interest Iron Boy promoters to schedule a female bout." Id.  Nebel responded that the "Phoenix possibility sounds incredible."  Id.  In or around April 2015, SAFE "began providing Nebel with goods, services and cash."  Compl. ¶ 16. "SAFE also provided Nebel with apparel," including a silver boxing dress, "that was emblazoned with SAFE's trademarked emblems and logos."  Id. ¶ 17.  Plaintiff secured a boxing match for Nebel at the event sponsored by Iron Boy Promotions in Phoenix, Arizona.  Sargenti Decl. ¶ 13.  During the match, which took place on July 25, 2015, Nebel wore the silver dress emblazoned with SAFE's trademarks.  Id.

Shortly after the Phoenix match, the Plaintiff's relationship with Nebel soured; the parties disagree as to the cause.  On the one hand, a dispute arose when Nebel "accused SAFE of 'sexualizing' [her]" after Carmela Franklyn posted a photograph on Facebook of Nebel wearing yoga pants.  Sargenti Decl. ¶ 15; see also Nebel Decl. ¶¶ 35-37.  Nebel asked that Carmela remove the photograph, and Carmela complied.  Nebel Decl. ¶ 36. However, Sargenti immediately advised Nebel, "I've just been made aware of your email to

1 Carmela which was very disturbing to me and the tone of which is inappropriate and hardly
2 recognizable.  I'm profoundly disappointed and we are clearly not on the same page.  I will
3 give you a call to discuss our plans for disengagement."  Id. ¶ 37; Nebel's Mot., Ex. 16.
4 Nebel contends that this dispute over her image led Sargenti to cancel the sponsorship.

5       On the other hand, Plaintiff contends that Sargenti canceled the sponsorship after he
6 learned, on July 28, 2015, "that representations previously made by Nebel were not true."
7 Compl. ¶ 18.  According to Plaintiff, Nebel had represented that: (1) she "was not then
8 represented by a manger or agent," when in fact she was "represented and managed by
9 [Niggemyer]"; and (2) "there was nothing in her background, or the background of those
10 associated with her that if known by the public would discredit SAFE as Nebel's sponsor,"
11 when in fact Nebel associated with Niggemyer, "who had been arrested on multiple counts
12 of assault and domestic violence."  Compl. ¶ 15.  Upon learning of these purported
13 misrepresentations, "SAFE immediately sent a letter to Nebel cancelling the sponsorship
14 and informing her that she was to return all property that SAFE had acquired for [her], to
15 return all SAFE apparel, and to cease using any of SAFE's trademarks."  Id. ¶ 19.[4]

16       On August 6, 2015, Nebel posted a photograph of herself on her Facebook page.
17 Compl. ¶ 20.  In the photo, Nebel is wearing the silver boxing dress with SAFE's trademark
18 symbol prominently displayed.  Id.  Upon seeing the photograph, SAFE sent Nebel a
19 second cease and desist letter, which again demanded that Nebel return all property SAFE
20 had given to her and cease using SAFE's trademarks.  Id. ¶ 21.  In alleged disregard of
21 Plaintiff's letters, Nebel has "willfully infringed upon SAFE's trademarks by continuing to
22 market herself on social media, including Facebook and Instagram, using SAFE's
23 trademarks."  Id. ¶ 23.  According to Plaintiff, there exists a strong likelihood of confusion
24 on the part of its customers that "SAFE continues to sponsor Nebel."  Id. ¶ 26.

25 _____

26    [4] Plaintiff does not allege how the purported misrepresentations came to light.
However, it appears Nebel's new trainer, Armin Van Damme, was involved.  See Sargenti
Decl. ¶ 17; Van Damme Decl. ¶ 4, Dkt. 27.  According to Van Damme, Niggemyer stated
27 on July 24, 2015, "that all decisions regarding Nebel's boxing career were to be made by
him [i.e., Niggemyer], and that SAFE was a 'tool to be used.'"  Van Damme Decl. ¶ 4.
28 Van Damme relayed this information to Sargenti.  Sargenti Decl. ¶ 17.

**B.   PROCEDURAL HISTORY**

On September 22, 2015, Plaintiff initiated the instant action, alleging causes of action for: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114, against Nebel and Niggemyer; (2) false endorsement in violation of the Lanham Act, 15 U.S.C. § 1125, against Nebel and Niggemyer; and (3) intentional misrepresentation, against Nebel only.  Plaintiff alleges that the Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and § 1367(a) (supplemental jurisdiction).  Plaintiff asserts that the Court enjoys personal jurisdiction over Defendants because they "purposely actively market and promote Nebel in California . . . via the Internet, on Facebook and Instagram websites."  Compl. ¶ 11.  In addition, Plaintiff asserts that "Nebel purposely made fraudulent misrepresentations . . . aimed at a citizen of the forum state of California, [i.e.,] SAFE, knowing that injury to SAFE would occur in California."  Id.

On October 30, 2015, Nebel filed the instant Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Nebel's Mot.").  Dkt. 20.  Nebel seeks dismissal of the action on the alternate grounds that this Court lacks personal jurisdiction and that venue in this district is improper.  On November 9, 2015, Niggemyer, acting pro se, filed the instant Motion to Dismiss for Lack of Memorandum in Support ("Niggemyer's Mot.").  Dkt 23.  Although labeled a motion, Niggemyer's filing reads like a declaration, wherein he avers, among other things, that he has no contacts with California.  Id. ¶¶ 1-3.

Plaintiff filed an Opposition to Nebel's Motion to Dismiss ("Opp'n to Nebel's Mot."), Dkt. 25, and an Opposition to Niggemyer's motion to Dismiss ("Opp'n to Niggemyer's Mot.), Dkt. 33, on November 13 and 23, 2015, respectively.  On November 20, 2015, Nebel filed a Reply.  Dkt. 32.[5]

_____

[5] Notably, although Nebel's motion seeks dismissal of the action for improper venue, see Nebel's Mot. at 13, Plaintiff responds that Nebel has failed to show Nevada is a more convenient forum.  See Opp'n to Nebel's Mot. at 15.  In her reply, Nebel counters that Nevada is a more convenient forum, and urges transfer of the action in the event that the Court finds dismissal unwarranted.  See Reply at 15.  As demonstrated below, the Court need not reach the parties' arguments regarding proper venue and forum.

**II.     LEGAL STANDARD**

A defendant may move to dismiss an action for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  Upon such a motion, the plaintiff bears the burden of establishing that jurisdiction is proper.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where the district court acts on the motion without an evidentiary hearing, "'the plaintiff need only make a prima facie showing of the jurisdictional facts.'"  Id. (citation omitted).  The Court accepts as true any uncontroverted allegations in the complaint, and resolves in the plaintiff's favor any factual conflicts presented in the parties' affidavits.  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002).  The court may not, however, "'assume the truth of allegations in a pleading which are contradicted by affidavit[.]'"  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citation omitted)).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state."  Boschetto, 539 F.3d at 1015.  Because California's long-arm statute is coextensive with federal due process requirements, the jurisdictional analysis under either standard is the same.  Mavrix, 647 F.3d at 1223.  For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "certain minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Under a minimum contacts analysis, jurisdiction may be either general or specific.  Boschetto, 539 F.3d at 1016.  In the instant action, Plaintiff does not allege that Defendants are subject to general jurisdiction; thus, only specific jurisdiction is at issue.  Specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's' regulation."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011).  In other words, "specific jurisdiction is confined to

adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" Id.

> The Ninth Circuit analyzes specific jurisdiction under a three-prong test:
>
> (1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Mavrix, 647 F.3d at 1227-28 (citation omitted).  The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff is successful, the burden shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

## III.   **DISCUSSION**

Both Nebel and Niggemyer move to dismiss the instant action for lack of personal jurisdiction.  Alternatively, Nebel moves to dismiss the action for improper venue, and/or to transfer the action to a more convenient forum--the United States District Court for the District of Nevada.  Plaintiff opposes Defendants' motions.

### A.   PROCEDURAL DEFECTS

As a threshold matter, Plaintiff contends that the Court should reject Niggemyer's motion for failure to "comply with the notice requirements of Federal Rule of Civil Procedure 6(c)(1) and [Civil] Local Rule 7.2(a)." Opp'n to Niggemyer's Mot. at 1.  The Court acknowledges the procedural deficiencies of Niggemyer's motion.[6]  Nevertheless, in

---

[6] A duly noticed motion "must be filed, served, and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion." N.D. Cal. Civ. L.R. 7-2(a).  The noticed hearing date and time must appear on the first page of the motion in the space opposite the caption and below the case number. Id. 7-2(b)(1).

the interests of justice and judicial economy, and for the reasons stated below, the Court declines to dismiss Niggemyer's motion on procedural grounds.

First, when Niggemyer filed his motion, Nebel had already filed her motion, with a hearing noticed for January 13, 2016.[7]  Second, notwithstanding any procedural objection, Plaintiff "construes" Niggemyer's motion as one "to dismiss for lack of personal jurisdiction," and opposes the motion on the merits.  Opp'n to Niggemyer's Mot. at 1.  The alleged procedural defects therefore have not prejudiced Plaintiff.  Third, Nebel and Niggemyer are similarly situated with respect to the pertinent jurisdictional inquiry; therefore, consistent and concurrent rulings are preferred.  Accordingly, the Court addresses Niggemyer's motion on the merits.

## B.   PERSONAL JURISDICTION

Plaintiff alleges trademark infringement and false endorsement claims against Nebel and Niggemyer, and an intentional misrepresentation claim against Nebel.  "Personal jurisdiction over each defendant must be analyzed separately."  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1129-30 (9th Cir. 2003).  Additionally, personal jurisdiction must exist "for 'each claim asserted against a defendant.'"  Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004)).  The Court therefore addresses Plaintiff's claims in turn.

### 1.   Trademark Infringement and False Endorsement

In analyzing the first prong of the tripartite test for specific personal jurisdiction over a tort claim, the Ninth Circuit applies the three-part "effects" test.  Picot, 780 F.3d at 1213-14 (citing Calder v. Jones, 465 U.S. 783 (1984)).[8]  "Under this test, a defendant personally directed his activities at the forum if he '(1) committed an intentional act, (2) expressly

---

[7] The Court subsequently took the matter under submission on the papers.

[8] Trademark and false advertising claims are akin to tort claims, and therefore, are analyzed under the purposeful direction test.  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320-21 (9th Cir. 2000) (applying purposeful direction test in trademark dilution action).

aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" Id. (citations omitted).  In applying this test, the court "must 'look[] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" Id. (quoting Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014)). "Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.' Rather, 'an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.'" Id. (quoting Walden, 134 S. Ct. at 1225).

**a.     *Nebel***

Nebel does not dispute that she committed an intentional act, or that she knew Plaintiff would likely suffer harm in the forum state.  Thus, the pertinent inquiry is "whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" Picot, 780 F.3d at 1214 (citation omitted).  "The exact form of our analysis varies from case to case and 'depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue.'" Id. (citation omitted).  Here, Plaintiff alleges that the Court has personal jurisdiction because Defendants "market and promote Nebel in California, including the Northern District of California, via the Internet, on Facebook and Instagram websites." Compl. ¶ 11.  Plaintiff alleges that Nebel "willfully infringed upon SAFE's trademarks by continuing to market herself on social media, including Facebook and Instagram, using SAFE's trademarks." Id. ¶ 23.  Thus, the court must consider whether Nebel expressly aimed her allegedly infringing activity at California.  In view of relevant precedent, the Court finds that Nebel has not.

"Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." Mavrix, 647 F.3d at 1231.  Maintenance of a "passive website," i.e., one that "does little more than make information available to those who are interested in it," Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Penn. 1997), cannot satisfy the express aiming prong. Mavrix, 647 F.3d at 1229.  Operating a passive website "in conjunction with 'something more'--conduct directly targeting the forum--is sufficient," however. Id. (quoting Rio

1  Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002)).  "In determining

2  whether a nonresident defendant has done 'something more,'" courts consider several

3  factors, including "the interactivity of the defendant's website, the geographic scope of the

4  defendant's commercial ambitions, and whether the defendant 'individually targeted' a

5  plaintiff known to be a forum resident."  Id. (citations omitted).

6        As Nebel persuasively argues, her social media posts are insufficient to establish

7  personal jurisdiction.  Contrary to Plaintiff's unsupported allegation, see Compl. ¶ 6, Nebel

8  has never "maintained a website."  Nebel Decl. ¶ 23.  Nebel maintains personal, non-

9  commercial profiles on Facebook and Instagram, which merely provide information

10 regarding Nebel and her boxing career to interested parties.  Id. ¶¶ 24-25.[9]  Plaintiff has

11 offered no evidence, and the Court finds none, that Nebel's Facebook and Instagram posts

12 were in any way directed or targeted at California or a California audience.  Cf. Mavrix,

13 647 F.3d at 1230 (holding that the defendant expressly aimed its conduct--posting of the

14 plaintiff's copyrighted photographs on the defendant's website--at the forum because the

15 defendant "anticipated, desired, and achieved a substantial California viewer base");

16 Burdick v. Superior Court, 233 Cal. App. 4th 8, 26 (2015) (holding that the defendant did

17 not expressly aim his conduct--posting of defamatory comments about the Plaintiff on his

18 Facebook page--at the forum because there was no evidence that "the Facebook page or the

19 posting were directed at the State of California or a California audience").  For example,

20 Plaintiff has not shown that the persons to whom Nebel directed her postings resided in

21 California, or that Nebel tailored the content of her posts for a California audience.  Nebel's

22 social media presence therefore did not form the requisite contact with California.

23        Plaintiff argues that, even if Nebel's social media posts constitute a passive web

24 presence, "Nebel's act of sending SAFE, a known California resident, emails both

25

26        [9] Plaintiff reproduces Nebel's allegedly infringing social media post from August 6,
   2015.  See Opp'n to Nebel's Mot. at 7.  The post includes a photograph of Nebel and an
27 opponent in the boxing ring.  Nebel is wearing the silver boxing dress emblazoned with
   SAFE's trademarked emblem.  An excerpt from an article reviewing Nebel's boxing
28 performance accompanies the photograph.

requesting a promotional deal and continuing negotiations with SAFE" constitutes the requisite "something more" necessary to establish personal jurisdiction.  Opp'n at 9.  The Court finds Plaintiff's argument unpersuasive.  Although Plaintiff asserts that Nebel reached out to SAFE and requested a sponsorship deal, <u>see</u> Opp'n to Nebel's Mot. at 9, the facts demonstrate otherwise.  *Sargenti* first approached Nebel in Washington, D.C., offered her a "gratuity," and broached a sponsorship.  Compl. ¶ 13; Sargenti Decl. ¶ 7.  Likewise, after a few months without contact, *Sargenti* emailed Nebel to arrange a meeting in Las Vegas, which is where the parties eventually discussed the proposed sponsorship.  Sargenti Decl. ¶ 9, Ex. 3; Nebel Decl. ¶ 32.  For her part, Nebel authored a few emails in response to inquiries from Sargenti.  Moreover, "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with [a plaintiff] who reside[s] there."  <u>Walden</u>, 134 S. Ct. 1122.  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  <u>Id.</u> at 1123 (citation omitted) ("jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum").  Nebel's contacts with Sargenti did not create an affiliation between Nebel and California, but rather, between Nebel and Plaintiff.

Accordingly, the Court finds that it lacks personal jurisdiction over Nebel with respect to Plaintiff's trademark claims.

### b.   *Niggemyer*

As stated above, Nebel and Niggemyer are similarly situated with regard to the jurisdictional inquiry.  Plaintiff does not allege that Niggemyer posted any material on Nebel's social media profiles, but rather, that Niggemyer "manages Nebel's . . . promotional activities."  Compl. ¶ 7; see also Opp'n to Niggemyer's Mot. at 1 (asserting that Niggemyer "directed Nebel's acts").  Plaintiff contends that this is sufficient for the exercise of personal jurisdiction over Niggemyer.  Setting aside the threshold matter of whether Niggemyer even committed an intentional act (an issue that Niggemyer fails to

*directly* contest),[10] the Court finds that it lacks personal jurisdiction over Niggemyer based on the same analysis set forth above with regard to Nebel--i.e., that Defendants did not expressly aim the allegedly infringing activity at California.

### 2.   Intentional Misrepresentation

Personal jurisdiction over Nebel is lacking with respect to Plaintiff's trademark claims.  Having found a lack of personal jurisdiction over Nebel with regard to all claims over which this Court has federal question jurisdiction, the Court declines to exercise supplemental subject matter jurisdiction over Plaintiff's intentional misrepresentation claim.  28 U.S.C. § 1367(c); see also Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010) (holding that the district court acted within its discretion when it declined to exercise supplemental subject matter jurisdiction over pendent state law claims after dismissing all federal law claims).

### C.   TRANSFER OR DISMISSAL

Upon a finding "that there is a want of jurisdiction," a federal district court "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed . . . ."  28 U.S.C. § 1631; Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990).  Generally, "transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'"  Id. (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962)); see also Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc., 793 F.3d 991, 996 (9th Cir. 2015) ("transfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith").

No party has addressed the issue of transfer or dismissal.  Nevertheless, the Court finds that transfer is appropriate in this case.  Both Nebel and Niggemyer are citizens of Nevada, see Nebel Decl. ¶ 1; Niggemyer's Mot. ¶ 1, and thus, the District of Nevada would

---

[10] Niggemyer avers that he has never acted as a boxing manager or agent on behalf of Nebel, and has never "maintained a website, [F]acebook, Instagram, [T]witter, or any other social media" for himself or anyone else.  Niggemyer's Mot. ¶¶ 11, 17.  However, Niggemyer does not expressly argue that he committed no intentional act.

have personal jurisdiction over Defendants.  Accordingly, the Court GRANTS Defendants' motions to dismiss for lack or personal jurisdiction and TRANSFERS the action to the United States District Court for the District of Nevada.  In view of the foregoing, the Court DENIES as MOOT Nebel's alternative motion to dismiss for improper venue and/or to transfer to a more convenient forum.

IV.     **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.     Nebel and Niggemyer's motions to dismiss for lack of personal jurisdiction are GRANTED, and the action is TRANSFERRED to the United States District Court for the District of Nevada.

2.     Nebel's alternative motion to dismiss for improper venue and/or transfer to a more convenient forum is DENIED as MOOT.

3.     All pending dates before this Court, including the upcoming case management conference, are vacated.

This terminates Dockets 20 and 23.

IT IS SO ORDERED.

Dated:  3/10/16

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge